PEARL KANIPE, Employee, Plaintiff v. LANE UPHOLSTERY, HICKORY TAVERN FURNITURE CO., Employer, SELF-INSURED, Defendants

No. COA01-1023

(Filed 16 July 2002)

## 1. Workers' Compensation— competency of doctor's testimony—law of the case doctrine inapplicable

A plaintiff in a workers' compensation case was not barred by the doctrine of the law of the case and could present the issue of the competency of a doctor's testimony as a lawful basis for the Industrial Commission's denial of disability compensation, because: (1) the law of the case doctrine only applies to points actually presented that are necessary for the determination of the case and not to dicta; and (2) the Court of Appeals' failure to consider the competency of the doctor's testimony as a basis for the

KANIPE v. LANE UPHOLSTERY

[151 N.C. App. 478 (2002)]

Commission's conclusion in a prior appeal means the statement in the Court's opinion that the Commission might lawfully have based its denial of disability compensation on the doctor's treatment plan in which plaintiff would not have missed more than a week of work was mere dicta and not binding in regard to plaintiff's present appeal.

## 2. Workers' Compensation— doctor's generalized statements concerning treatment—speculation

The Industrial Commission erred in a workers' compensation case by denying plaintiff's claim for total disability benefits and by subsequently concluding that plaintiff was not entitled to any disability benefits based on a doctor's general statements as to the treatment plan of his patients and the time line under which he operates to return them to work, because: (1) if the Commission's findings are based entirely upon the weight of one doctor's expert opinion testimony, that testimony must be competent and not based on conjecture and speculation; (2) while the doctor's testimony reflects his general treatment of the majority of his patients, it does not leave room for the possibility that some patients will be incapable of returning to work after the seven-day period following surgery; and (3) as the doctor stated that he individualizes the decision to return a patient to work and that he did not see plaintiff after her surgeries or express an opinion regarding her post-surgery condition, any inferences made in respect to plaintiff's ability to return to work would be mere speculation.

Appeal by plaintiff from opinion and award filed 10 April 2001 by the North Carolina Industrial Commission. Heard in the Court of Appeals 21 May 2002.

*Patterson, Harkavy & Lawrence, L.L.P., by Henry N. Patterson, Jr. and Martha A. Geer, for plaintiff appellant.*

*Robinson & Lawing, L.L.P., by Jolinda J. Babcock, for defendant appellees.*

GREENE, Judge.

Pearl Kanipe (Plaintiff) appeals an opinion and award filed 10 April 2001 by the Full Commission (the Commission) of the North Carolina Industrial Commission (the Industrial Commission) denying

her claim for disability compensation against Lane Upholstery, Hickory Tavern Furniture Co. (Defendant).[1]

On 26 June 1997, Plaintiff filed a Form 18 claiming workers' compensation due to bilateral carpal tunnel syndrome. On 11 July 1997, Plaintiff filed a Form 33 request for hearing before a deputy commissioner of the Industrial Commission in which she stated that Defendant refused to pay for treatment with her choice of physician, Dr. DePerczel, and requested compensation for her disability. On 9 September 1997, Defendant filed a Form 60 admitting Plaintiff's "right to compensation for an . . . occupational disease as of 4/10, 1997" but denying that Plaintiff had suffered any disability "from work to date."

The evidence presented at the hearing revealed that while Defendant had authorized carpal tunnel release surgery for Plaintiff with Dr. Carl Michael Nicks (Dr. Nicks), she underwent surgery for both her wrists with Dr. DePerczel instead. After the first surgery on 9 July 1997, Dr. DePerczel never released Plaintiff to go back to work because Plaintiff could no longer perform her duties as a sewer and "did[] [not] have any other work options." While Plaintiff developed other health problems sometime after her carpal tunnel release surgeries, Dr. DePerczel thought that even without these additional problems "she would have had [only] a small chance of going back to work" as a sewer. Dr. DePerczel based his decision to keep Plaintiff out of work on the fact that "both of [Plaintiff's] hands were severely involved." Plaintiff had experienced "symptoms for such a long time, which mean[t] that there [was] more inflammation of the nerve and probably more permanent damage to the nerve." Dr. DePerczel also testified at his deposition that he had not yet rated Plaintiff for maximum medical improvement in respect to her hands.

Dr. Nicks testified during his deposition that he had performed thousands of carpal tunnel release surgeries and was familiar with the type of work that is done at furniture and upholstery plants such as the one operated by Defendant. The first and only time Dr. Nicks saw Plaintiff was on 4 June 1997. At this time, Dr. Nicks diagnosed Plaintiff with bilateral carpal tunnel syndrome and recommended surgery, beginning with the right wrist and followed by surgery on the left wrist after three to four weeks. Dr. Nicks testified that, after

---

1. While Plaintiff, in her notice of appeal to this Court, states that she is also appealing the Commission's denial of her request for treatment with her doctor, Dr. John DePerczel (Dr. DePerczel), she has not assigned error to this. Accordingly, this issue is not before this Court. See N.C.R. App. P. 10(a).

surgery, he generally returns his patients to work after only a couple of days with limitations of one-handed work for approximately three weeks. If the work environment is dirty and could potentially soil or damage a patient's wound, Dr. Nicks will keep his patient out of work for up to a week. "At the end of three to four weeks, [Dr. Nicks] generally . . . review[s] each case individually." Because Dr. Nicks individualizes the decision to return a patient to work, he could not give a general answer when asked what type of restriction he tends to impose after returning a patient to work. In explaining his approach of returning patients to work, Dr. Nicks noted that:

> [t]hey[] [are] always allowed to work, but with restrictions. Our policy in our office is to document the restrictions medically speaking that a patient needs to observe[,] and we let the employer decide whether they want to take them out of work or not. Sometimes those restrictions are so profound that they cannot legitimately do the job that they have always performed. And they might have to be put in a much less demanding position, but we very rarely take anybody completely out of work.

Anne Story, Defendant's human resource manager, testified at the hearing that had Plaintiff been released to light-duty employment, Defendant would have accommodated her "if there were jobs available within the restrictions."

In its opinion and award filed 26 June 1998, the deputy commissioner concluded Plaintiff was entitled to all medical expenses incurred as a result of her carpal tunnel syndrome, including expenses incurred while receiving treatment from Dr. DePerczel. The deputy commissioner also concluded Plaintiff was entitled to payment of temporary total disability compensation from 9 July 1997 onward. On appeal, the Commission, in an opinion and award filed 25 May 1999, reversed the deputy commissioner's award. The Commission found that:

> 1. Plaintiff began working as a sewer for [D]efendant in November 1969 and continued working in that capacity throughout her employment with [D]efendant.

> 2. In April 1997, [P]laintiff reported numbness in both her hands and left shoulder to her [doctor] . . . . [Her doctor] referred [P]laintiff to [Dr. DePerczel].

> . . . .

5. On 6 May 1997, Dr. [D]ePerczel examined [P]laintiff and diagnosed bilateral carpal tunnel syndrome.

6. Upon learning [from Plaintiff] that [P]laintiff's condition was caused by her work, [D]efendant attempted to direct [P]laintiff to appropriate medical treatment. . . .

. . . .

9. On 4 June 1997, [P]laintiff presented [herself] to Dr. Nicks for examination, which was approved by [D]efendant. Dr. Nicks diagnosed her with bilateral carpal tunnel syndrome . . . and recommended surgical treatment consisting of carpal tunnel releases. Dr. Nicks scheduled [P]laintiff for surgery for 12 June 1997.

10. On 9 June 1997, [P]laintiff filed an Industrial Commission Form 18 . . . stating that she had contracted bilateral carpal tunnel syndrome as a result of her work as a sewer for [D]efendant. By that date, [D]efendant had already informed [P]laintiff that it would accept liability for her workers' compensation claim and would pay for and direct her medical treatment.

11. On 10 June 1997, [P]laintiff canceled the surgery . . . with Dr. Nicks.

. . . .

13. Although [P]laintiff was aware that [D]efendant was refusing to pay for treatment by Dr. [D]ePerczel, she chose to proceed with surgery on 7 July 1997. On that date, Dr. [D]ePerczel performed a right carpal tunnel release[,] and on 13 August 1997, he performed a left carpal tunnel release.

14. Dr. [D]ePerczel removed [P]laintiff from work beginning 9 July 1997 and, at the time of the hearing before the [d]eputy [c]ommissioner, had not released her to return to work. After 9 July 1997, [P]laintiff did not return[] to work in any capacity for any employer.

. . . .

20. Any inability by [P]laintiff to earn wages subsequent to 9 July 1997 was not related to her work for [D]efendant or her occupational disease.

The Commission concluded that (1) Defendant was not responsible for Plaintiff's unauthorized treatment with Dr. DePerczel and

(2) Plaintiff was not entitled to "any disability compensation" after 9 July 1997.

Upon Plaintiff's appeal from the 25 May 1999 decision, this Court affirmed the Commission's denial of Plaintiff's medical expenses with Dr. DePerczel but vacated and remanded the Commission's opinion and award in part because the Commission had failed to make any findings explaining its denial of disability compensation. *See Kanipe v. Lane Upholstery*, 141 N.C. App. 620, 540 S.E.2d 785 (2000) (hereinafter *Kanipe I*). This Court stated that:

> Perhaps the Commission based its denial on [P]laintiff's refusal to undergo medical treatment with Dr. Nicks. If so, this is not a valid reason for denial . . . . Alternatively, the Commission might have based its denial of disability compensation on Dr. Nicks' treatment plan, in which he determined that [P]laintiff would not have missed more than a week of work due to her injury. If that were the case, this basis would be lawful. *See* N.C. Gen. Stat. § 97-28 ("No compensation . . . shall be allowed for the first seven calendar days of disability resulting from an injury, except [medical expenses]."). But because the Commission never made any specific findings, we simply do not know whether it denied disability compensation on a lawful or unlawful basis. We therefore remand to the Commission to reconsider [P]laintiff's claim for disability compensation and to make explicit findings with respect to this claim.

*Id.* at 627, 540 S.E.2d at 790.

On 16 February 2001, Plaintiff filed with the Commission a request for supplemental briefing and oral arguments to address issues raised by the Court of Appeals decision. Without ruling on Plaintiff's request, the Commission filed a revised opinion and award on 10 April 2001 in which it added the following findings:

> 15. Dr. Nicks has performed thousands of carpal tunnel release surgeries. Based upon his professional experience and his personal examination of [P]laintiff, Dr. Nicks recommended that she undergo carpal tunnel release on her right wrist and the same surgery on the left wrist about three to four weeks later. Under Dr. Nicks' care, [P]laintiff would have remained out of work for two days after each surgery and returned to work with restrictions of one-handed work for three to four weeks. At most, [P]laintiff would have missed an entire week of work if her work

environment was dirty because her wound could have been soiled or damaged.

16. The . . . Commission gives great weight to the medical opinion of Dr. Nicks and finds that [P]laintiff did not miss more than seven days from work as a result of her bilateral carpal tunnel syndrome.

. . . .

22. The greater weight of the evidence fails to show that [P]laintiff missed more than seven days from work as a result of her bilateral carpal tunnel syndrome.

The Commission again found that "[a]ny inability by [P]laintiff to earn wages subsequent to 9 July 1997 was not related to her work for [D]efendant or her occupational disease." The Commission then concluded that:

3. Plaintiff did not miss more than seven days as a result of her bilateral carpal tunnel syndrome. Therefore, [P]laintiff is not entitled to total disability benefits.

4. Any inability by [P]laintiff to earn wages subsequent to 9 July 1997 was not related to her occupational disease[,] and she is, therefore, not entitled to any disability compensation after that date.

The dispositive issues are whether: (I) *Kanipe I* is binding on this Court in determining the competency of Dr. Nicks' testimony; and if not, (II) Dr. Nicks' testimony is sufficient to support the Commission's denial of disability compensation.

I

[1] Defendant argues "the doctrine of 'the law of the case' prevents Plaintiff from appealing the issue[] presently before this Court" because the issue has already been decided in *Kanipe I*. We disagree.

" 'As a general rule, when an appellate court passes on questions and remands the case for further proceedings to the trial court, the questions therein actually presented and necessarily involved in determining the case, and the decision on those questions become the law of the case.' " *Creech v. Melnik*, 147 N.C. App. 471, 473, 556 S.E.2d 587, 589 (2001) (citations omitted). Pursuant to the law of the case

doctrine, "an appellate court ruling on a question governs the resolution of that question both in subsequent proceedings in the trial court and on a subsequent appeal, provided the same facts and the same questions, which were determined in the previous appeal, are involved in the second appeal." *Id.* at 473-74, 556 S.E.2d at 589. The law of the case doctrine, however, only applies to points actually presented and necessary for the determination of the case and not to dicta. *Id.* at 474, 556 S.E.2d at 589.

In *Kanipe I*, this Court held the Commission's findings were insufficient to determine the basis of its denial of disability compensation and remanded the case. *Kanipe I*, 141 N.C. App. at 627, 540 S.E.2d at 790. This Court stated that "the Commission might have based its denial of disability compensation on Dr. Nicks' treatment plan, in which he determined that [P]laintiff would not have missed more than a week of work due to her injury," which this Court perceived as a lawful basis for the Commission's denial of disability compensation. As this Court, however, did not consider the competency of Dr. Nicks' testimony in reaching this conclusion, it is mere dicta and not binding on this Court in regard to Plaintiff's present appeal.

## II

**[2]** Plaintiff argues Dr. Nicks' testimony is insufficient to support the Commission's findings that "[P]laintiff did not miss more than seven days from work as a result of her bilateral carpal tunnel syndrome" and therefore "[a]ny inability by [P]laintiff to earn wages subsequent to 9 July 1997 was not related to her work for [D]efendant or her occupational disease." We agree.

If the Commission's findings are based entirely upon the weight of one doctor's expert opinion testimony, that testimony must be competent and not based on "conjecture and speculation." *Young v. Hickory Bus. Furniture*, 353 N.C. 227, 230-31, 538 S.E.2d 912, 914-15 (2000).

In this case, Dr. Nicks made only general statements as to the treatment plan of his patients and the time line under which he returns them to work. As Dr. Nicks explained, his office operates under the policy that patients are "always allowed to work, but with restrictions." Only "rarely" does he "take anybody completely out of work." While this testimony reflects Dr. Nicks' general treatment of the majority of his patients, it does leave room for the possibility that

some patients will be incapable of returning to work after the seven-day period following surgery. Moreover, as Dr. Nicks stated that he individualizes the decision to return a patient to work and he did not see Plaintiff after her surgeries nor express an opinion[2] regarding her post-surgery condition, any inferences made in respect to Plaintiff's ability to return to work would be mere speculation. As such, Dr. Nicks' testimony was insufficient to support the Commission's findings that "[P]laintiff did not miss more than seven days from work as a result of her bilateral carpal tunnel syndrome" and therefore "[a]ny inability by [P]laintiff to earn wages subsequent to 9 July 1997 was not related to her work for [D]efendant or her occupational disease." Accordingly, the Commission's denial of Plaintiff's claim for total disability benefits and its subsequent conclusion that Plaintiff was not entitled to "any disability benefits" was error and must be reversed and remanded.

Reversed and remanded.

Judges McGEE and BIGGS concur.

—————————————————————————————

2. Based, for instance, on a review of Plaintiff's medical documents.