***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Glenn and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives, except for modifications regarding contempt and the right to depose medical witnesses. Therefore, the Full Commission enters the following Opinion and Award.
 ***********
The Full Commission finds as additional fact and concludes as additional matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. That all parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At all relevant times herein the employer-employee relationship existed between the defendant-employer United Federation of Dairy Herd, Inc. and plaintiff Vivian Leftwich.
3. The carrier on the risk for defendant-employer on June 5, 1997 was Hartford Insurance Group.
4. Plaintiff's average weekly wages on June 5, 1997 were $253.32.
5. Beginning on or about July 30, 1997 defendants have paid plaintiff total disability benefits at $168.88 per week.
6. The parties' Pre-trial Agreement as amended at the hearing before the deputy commissioner was received and approved by the deputy commissioner. The parties stipulated to admission into evidence of the following: (i) Commission Proceedings consisting of 44 pages, Stipulated Exhibit 1; (ii) Volume I of plaintiff's medical records consisting of about 101 pages, Stipulated Ex. 2; (iii) Volume II of plaintiff's medical records consisting of about 41 pages, Stipulated Ex. 3; and (iv) plaintiff's physical therapy records consisting of about 32 pages, Stipulated Ex. 4.
7. The disputed issues for resolution for the undersigned are as follows:
 a) Whether the Commission will approve plaintiff's March 13, 2002 motion under G.S. § 97-25 seeking approval of Dr. Nelson Gardner of Mount Airy, NC to assume plaintiff's conservative care as part of this claim, including approving medication prescribed for plaintiff by Dr. Gardner?
 b) Whether defendants have defended plaintiff's motion without reasonable ground in violation of G.S. § 97-88.1?
 *********** EVIDENTIARY RULINGS
Defendants' motion for permission to obtain post-hearing deposition testimony from plaintiff's treating or evaluating physicians which was denied by Deputy Commissioner George T. Glenn II, is hereby APPROVED.
Plaintiff's motion requesting a different procedure for the hearing based on a denial of a Form 24 is hereby DENIED. The normal procedure shall control the disposition of any such appeals.
 ***********
Based upon the record evidence, the Full Commission makes the following additional
 FINDINGS OF FACT
1. On June 5, 1997 plaintiff sustained an injury by accident when she was kicked in the head by a cow. Thereafter, plaintiff was treated by a number of physicians for various problems, which are not at issue at this time.
2. However, plaintiff's moderate to severe neck pain, right arm and hand pain and numbness grew worse in the period from August 1999 to June 2000. On June 10, 2000, Winston-Salem neurosurgeon, Dr. William R. Brown, Jr. read plaintiff's March 31, 2000 cervical MRI to reveal a small central disc herniation at C4-5 and a larger central disc herniation focally abutting and compressing the cervical cord at C5-6. Dr. Brown recommended surgery.
3. Defendants sent plaintiff to Dr. T. Scott Ellison of Charlotte Orthopedic Specialists for a second opinion. In Dr. Ellison's June 29, 2000 report he wrote that he agreed with the surgery recommended by Dr. Brown. Dr. Ellison wrote that the neck surgery would not be expected to help relieve plaintiff's dizziness, jaw pain, ear pain or right eye visual deficits.
4. On August 4, 2000 Dr. Brown performed an anterior cervical copectomy and cervical fusion operation at C4-5 and C5-6 levels of plaintiff's spine with hip graft and plates.
5. By July 2001 defendants assigned a rehabilitation nurse Sue Greer to meet with plaintiff and Dr. Brown.
6. At plaintiff's last evaluation by Dr. Brown on September 4, 2001, plaintiff continued to suffer from significant neck pain extending into her right arm as well as bilateral hand numbness, right worse than left. On September 4, 2001 Dr. Brown placed the following permanent medical restrictions on plaintiff's activities due to the condition of her neck: (i) no bending, crawling or twisting; (ii) no reaching or overhead work; (iii) no lifting more than five pounds; (iv) limited standing of one hour maximum without breaks; (v) limited sitting of one hour without breaks; and (vi) no driving of an automobile.
7. On September 4, 2001 Dr. Brown released plaintiff from his active neurosurgical care, prescribed Hydrocodone and Valium for plaintiff, and referred plaintiff to the care or her primary care physician Dr. Lloyd Grymes located in Mount Airy.
8. Sometime in late 2001 or early 2002 plaintiff saw Dr. Grymes who informed her that he did not treat patients who suffered from chronic pain. Dr. Grymes referred plaintiff to another primary care physician, Dr. D. Nelson Gardner, for monitoring of her chronic neck and hand pain.
9. On March 13, 2002 plaintiff submitted her motion to the Industrial Commission seeking approval of Dr. D. Nelson Gardner of Mount Airy to assume care for her ongoing neck and arm pain in this claim. In the motion, plaintiff specifically requested defendants' consent to the motion, seeking to avoid a hearing.
10. On March 18, 2002 defendants responded in opposition to the motion, taking the position that Dr. Brown had not referred plaintiff to Dr. Gardner and that a family physician is not qualified to provide pain management therapy, including prescriptions for long-term narcotics.
11. On March 26, 2002 plaintiff saw Dr. Gardner's physician's assistant Edward L. McDowell who took a detailed history concerning plaintiff's medical problems resulting from her June 6, 1997 accident when she was kicked in the head by a cow. P.A. McDowell noted that plaintiff complained of crying spells due to her pain, and felt depressed. He diagnosed plaintiff with neck pain subsequent to her post cervical fusion and prescribed Lortab 2.5 mg. twice a day, as well as Celexa 20 mg. once a day.
12. On April 16, 2002 plaintiff returned to Dr. Gardner's office where she again saw P.A. McDowell.
13. On April 29, 2002 the Industrial Commission received plaintiff's hearing request on her motion for approval of Dr. Gardner.
14. On June 4, 2002 defendants submitted their response in which they took the position that family physician Gardner "is not the appropriate physician to provide continuing treatment to plaintiff."
15. On July 17, 2002 plaintiff returned to Dr. Brown complaining of worsened neck, bilateral arm and hand pain, as well as black out spells. Dr. Brown gave plaintiff samples of Bextra and prescribed additional tests.
16. On August 12, 2002 plaintiff returned to P.A. McDowell complaining of ongoing neck pain and depression due to her chronic pain. P.A. McDowell prescribed Wellbutrin SR 100 twice a day.
17. On August 28, 2002 plaintiff returned to Dr. Brown who interpreted an August 20, 2002 MRI to reveal a small midline disc herniation at C3-4. Dr. Brown did not prescribe additional surgery. Dr. Brown referred plaintiff to Winston-Salem neurologist, David D. Meyer, M.D. for evaluation of plaintiff's syncope or fainting spells.
18. On October 21, 2002 plaintiff returned to see Dr. Meyer complaining of severe headaches and passing out spells. Defendants have now agreed to pay Dr. Meyer to treat plaintiff.
19. On November 5, 2002 plaintiff was evaluated by ear, nose and throat specialist John S. May, M.D. of Wake Forest University Baptist Medical Center at defendants' request. Dr. May interpreted plaintiff's vestibular studies of October 23, 2002 to reveal that plaintiff has increased dependence on visual perception for maintenance of equilibrium which is consistent with peripheral vestibular dysfunction secondary to her history of a right perilymph fistula from being kicked in the head by a cow.
20. Plaintiff continues to suffer from frequent headaches, as well as vertigo or frequent dizzy spells, particularly when she changes positions. She also continues to suffer from chronic neck pain and bilateral arm/hand pain. She is limited to using her right hand to perform simple activities for short periods of time due to pain and weakness.
21. In this claim defendants have previously been ordered to pay for plaintiff's medical care provided her by Dr. Brown pursuant to a Consent Order entered by former Deputy Commissioner Ford.
22. Since March 2002 defendants have refused to pay Dr. Gardner to treat plaintiff for her ongoing neck pain and refused to pay for the medications prescribed for her by Dr. Gardner. Defendants have not claimed that the treatment or medications prescribed for plaintiff by Dr. Gardner are inappropriate; rather, defendants allege Dr. Gardner to be unqualified to prescribe pain medication.
23. While the better practice would have been for the deputy commissioner to have allowed defendants to depose Dr. Brown, or for defendants to have obtained information from Dr. Brown at a pre-trial deposition, because of defendants' failure to timely provide the pain management recommended by the treating physician by an alternative physician and because Dr. Brown recommended pain management specifically by a general practitioner, albeit a different general practitioner, plaintiff's treatment by Dr. Gardner is both reasonable and necessary. Further, approval of treatment was timely requested.
24. Defendants have had an opportunity since September 2001 to have plaintiff evaluated by a physician of their choosing under N.C. Gen. Stat. § 97-27(a). Defendants have failed to have plaintiff so evaluated, except by Dr. May, who did not see plaintiff for evaluation of neck pain.
25. Defendants' opposition to Dr. Gardner's being approved as plaintiff's primary care physician in relation to pain management, for plaintiff's neck pain, arm and hand pain is baseless and without reasonable ground.
26. Based on the facts of this case, defendants may hereafter obtain expert witness testimony by deposition. Thereafter, should defendants propose that another type of physician is better qualified to render pain management or other medical treatment, it may then file a motion for a change of designation of treating physician(s) with the Executive Secretary's office or with a deputy commissioner if the matter is pending for hearing. Unless and until such motions are filed, plaintiff will continue under the care of Dr. Gardner for pain management.
 ***********
The foregoing findings of fact and conclusions of law engender the following additional
 CONCLUSIONS OF LAW
1. By their failure to direct medical care in a timely manner, defendants lost the right to object to the pain management treatment provided by the office of Dr. Gardner. Thus, plaintiff's motion to approve Dr. Gardner to assume her care for conservative treatment, including medications, for plaintiff's neck, arm and hand pain, excluding treatment for headaches and syncope, which are being treated by Dr. Meyer, is approved retroactively to March 2002. N.C. Gen. Stat. § 97-25. Kanipev. Lane Upholstery, Hickory Tavern Furniture Co., 151 N.C. App. 478,566 S.E.2d 167 (2002).
2. Defendants have refused and failed without reasonable ground to provide ongoing medical treatment for plaintiff's admitted injuries since March 2002 when primary treating physician-surgeon Dr. Brown referred plaintiff to her primary care physician for treatment of ongoing neck pain, who referred plaintiff's treatment to another general practitioner. Thus, plaintiff is entitled to reasonable attorney's fees as the defense of this claim was not reasonable and was founded in stubborn litigiousness. N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission makes the following
 AWARD
1. Defendants shall pay for all medical treatment rendered by the office of Dr. D. Nelson Gardner since March 2002 to plaintiff for her neck pain and related problems due to her June 1997 injuries, including future medical care until further order of the Commission.
2. Defendants shall pay for all medications prescribed for plaintiff by Dr. Gardner or his practice retroactive to March 2002 and continuing until further order of the Commission.
3. Pursuant to the provisions of N.C. Gen. Stat. § 97-88.1, defendants shall pay to counsel for the plaintiff an attorney's fee in the amount of $2,200.00 for defending this matter on appeal to the Full Commission. This fee is to be paid in addition to the previous fees awarded as a percentage of the plaintiff's compensation.
This the 6th day of October 2003.
 S/ ____________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/ ____________________ BUCK LATTIMORE CHAIRMAN
 S/ ____________________ LAURA KRANIFELD MAVRETIC COMMISSIONER