JEFFREY B. CARROLL, Plaintiff
v.
JAMES P. FERRO, DELPHIN PROPERTIES, LLC, COMMUNITY LAND ASSOCIATES, LLC and ASSOCIATES HOUSING FINANCE, LLC, Defendants
No. COA07-1417
Court of Appeals of North Carolina
Filed September 2, 2008
This case not for publication
Harris & Hilton, P.A., by Nelson G. Harris, for plaintiff-appellant.
James, McElroy & Diehl, P.A., by Richard B. Fennell, for defendants-appellees.
CALABRIA, Judge.
Jeffrey B. Carroll ("plaintiff") appeals an order modifying an arbitration award. We reverse.
In August of 1998, plaintiff and James P. Ferro ("Ferro") entered into a business relationship to acquire land and develop manufactured home communities. Plaintiff and Ferro formed Delphin Properties, LLC ("Delphin") and Community Land Associates, LLC ("Community Land") with each owning fifty percent of both entities. Both Delphin and Community Land were governed by respective operating agreements. Each operating agreement provided for unresolved disputes among the members with respect to the operating agreement or the management of the operation of the company. Specifically, in the event of unresolved disputes, "any party may submit the dispute to binding arbitration in accordance with the Commercial Rules of the American Arbitration Association then in effect."
On 2 October 2002, plaintiff filed a complaint asserting several claims against Ferro, Delphin, Community Land (collectively referred to as "defendants") and Associates Housing Finance, LLC ("Associates"). Plaintiff's claims against Associates were later voluntarily dismissed without prejudice and Associates did not participate in any subsequent proceedings.
On 22 January 2003, the trial court found plaintiff's claims were subject to arbitration and stayed the action pending arbitration. Plaintiff filed a demand for arbitration with the American Arbitration Association ("AAA") on 4 February 2003. On 17 December 2004, the arbitrator entered an arbitration award ("the award"). Plaintiff's award included $2,629,224 for the unfair and deceptive practices ("UDP") claim, $8,000 plus interest, and $8,000 in liquidated damages for his unpaid wages claim. In addition, the arbitrator's award included an alternative award against Ferro in the amount of $876,408 for breach of contract and breach of fiduciary duty.
On 28 March 2005, plaintiff filed an application to confirm the award. Defendants filed a motion to vacate, or in the alternative, to modify or correct the arbitration award. On 28 July 2005, the Honorable Timothy L. Patti ("Judge Patti") partially vacated, modified and corrected the award. Both parties appealed. On 5 September 2006, this Court issued an opinion remanding the case to the trial court because the record did not support grounds for vacating or modifying the award. See Carroll v. Ferro, 179 N.C. App. 402, 633 S.E.2d 708 (2006).
On 21 September 2007, Judge Patti considered the same record and entered a Post-Appeal Order Confirming Partially Vacated, Modified and Corrected Arbitration Award ("the Post-Appeal Order"). In the Post-Appeal Order, the trial court modified the award by concluding the arbitrator awarded on a matter that was not submitted to him when he issued an award "in an amount greater than the agreed upon damage cap." The trial court partially vacated the award on the basis that the arbitrator exceeded his authority to award more than $1,000,000. Plaintiff appeals.

I. Application of the Federal Arbitration Act
As a preliminary matter, we first address whether the trial court erred in concluding that the Federal Arbitration Act ("FAA") applies to this case, as opposed to the North Carolina Uniform Arbitration Act ("NCUAA"). Plaintiff argues the NCUAA controls because defendants did not apply for arbitration under the FAA and the arbitrator ruled that the NCUAA applied. We disagree.
The FAA is enforceable in both federal and state courts. Burke Co. Public Schools Bd. of Ed. v. Shaver P'ship, 303 N.C. 408, 422, 279 S.E.2d 816, 824 (1981); Park v. Merrill Lynch, 159 N.C. App. 120, 122, 582 S.E.2d 375, 377 (2003) (citing Perry v. Thomas, 482 U.S. 483, 96 L. Ed. 2d 426 (1987)). Where "performance of the contract . . . necessarily involves . . . that the parties to the agreement must have contemplated . . . substantial interstate activity, the contract evidences a transaction involving commerce within the meaning of the [FAA]." Burke, 303 N.C. at 418, 279 S.E.2d at 822; see also First Union Secs., Inc. v. Lorelli, 168 N.C. App. 398, 399, 607 S.E.2d 674, 676 (2005) (stating contracts affecting interstate commerce are governed by the FAA); Carpenter v. Brooks, 139 N.C. App. 745, 749, 534 S.E.2d 641, 645 (2000) (applying the FAA where there is a contract evidencing a transaction involving commerce; defining commerce under the FAA as interstate or foreign commerce). "Whether a contract evidenced a transaction involving commerce within the meaning of the FAA is a question of fact" for the trial court. Eddings v. S. Orthopaedic & Musculoskeletal Assocs., PA, 167 N.C. App. 469, 474, 605 S.E.2d 680, 683 (2004) (internal quotations omitted).
The trial court found that "[t]he parties' business dealings, including the conduct at issue here, took place in multiple states. The FAA, then, controls." This conclusion is supported by evidence that the parties' business relationship involved real estate transactions in several states. Since the parties' contract involved interstate commerce, we conclude the trial court did not err in applying the FAA. Furthermore, although plaintiff contends defendants "waived" applicability of the FAA in their motion to dismiss plaintiff's complaint, this contention is unsupported by any authority. "The Federal Arbitration Act, by virtue of the Supremacy Clause, is . . . part of North Carolina law." Burke, 303N.C. at 422, 279 S.E.2d at 824 (concluding that choice of law provisions do not preclude application of the FAA).

II. Standard of Review
The standard of review for court orders confirming or vacating arbitration awards under the FAA is to accept findings of fact which are not clearly erroneous and review conclusions of law de novo. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 947-48, 131 L.Ed.2d 985, 986 (1995); First Union Secs., Inc., 168 N.C. App. at 400, 607 S.E.2d at 676.
The FAA allows modification of an arbitration award upon application of any party where the arbitrators awarded on a matter not submitted to them, unless the matter does not affect the merits of the decision upon the matter submitted. 9 U.S.C.A. § 11(b) (2007).
Here, the trial court concluded that the arbitrator "awarded on a matter not submitted to him when he issued an award in an amount greater than the agreed upon damage cap." The trial court also concluded that the arbitrator "exceeded or imperfectly executed his powers and authority in awarding Carroll an amount greater than $1,000,000, warranting partial vacatur under both federal law and the laws of North Carolina." The Post-Appeal Order also modified the arbitration award ordering that "Carroll may only recover from the Arbitration Defendants, collectively, the principal sum of $1,000,000.00, with interest thereon at the legal rate from the date of entry of this Order until paid in full." In Carroll v. Ferro this Court determined that although the trial court used the word "vacated" in its order, the trial court's reduction of the award from $2,667,913.82 to $1,000,000 was considered a modification and not a vacatur. Ferro at 404, 633 S.E.2d at 710. Where the same facts and the same questions of law are involved in a decision on a former appeal, the appellate decision becomes the law of the case and that ruling governs the resolution of those questions in a later appeal. Kanipe v. Lane Upholstery, 151 N.C. App. 478, 484-85, 566 S.E.2d 167, 171 (2002). Although the Post-Appeal Order concludes the arbitration award should be "partially vacated to the extent that the Arbitrator awarded sums in excess of the agreed to cap," under the law of the case, the court's order was a modification and not a vacatur. Therefore, we review the Post-Appeal Order to determine whether the trial court erred in modifying the award.

III. Analysis

A. Modification of Arbitration Award
We note that "a strong policy supports upholding arbitration awards." WMS, Inc. v. Weaver, 166 N.C. App. 352, 357, 602 S.E.2d 706, 709 (2004) (quoting Cyclone Roofing Co. v. David M. LaFave Co., 312 N.C. 224, 234, 321 S.E.2d 872, 879 (1984)). An arbitration award is intended to settle the matter in controversy and save the expense of litigation. Id., 602 S.E.2d at 710 (quoting Cyclone Roofing Co., 312 N.C. at 236, 321 S.E.2d at 880). "An [arbitration] award is presumed to be valid, and the party seeking to set it aside must demonstrate an objective basis in the record for concluding that the arbitrator in fact exceeded his authority." FCR Greensboro, Inc. v. C & M Investments, 119 N.C. App. 575, 577, 459 S.E.2d 292, 294 (1995) (citation omitted).
The court's authority to modify an arbitration award is limited to the grounds contained in the FAA. Gwynn v. Clubine, 302 F. Supp. 2d 151 (W.D.N.Y. 2004);U.S. Postal Service v. American Postal Workers Union, 564 F. Supp. 545 (S.D.N.Y. 1983). Courts may modify an arbitration award "[w]here the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted." 9 U.S.C.A. § 11(b). In determining this appeal, we are bound "by decisions of the United States Supreme Court construing and applying the FAA." WMS, 166 N.C. App. at 358, 602 S.E.2d at 710. "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed a serious error does not suffice to overturn his decision." United Paper workers Int'l Union v. Misco, Inc., 484 U.S. 29, 38, 98 L. Ed. 2d 286 (1987).
In WMS v. Weaver, this Court examined whether the arbitrator exceeded his authority in awarding treble damages for an unfair and deceptive practices claim. WMS, 166 N.C. App. at 358, 602 S.E.2d at 710. Defendants sought vacatur of the award because the arbitration agreement provided that the arbitrator did not have authority to enter punitive damages. Id. This Court held that the arbitrator does not exceed his powers if the remedy awarded is one allowed under State law and the arbitration agreement does not unequivocally preclude that remedy. Id. at 359, 602 S.E.2d at 711 (citing Gateway Tech., Inc. v. MCI Telecomm. Corp., 64 F.3d 993, 999 (5th Cir. 1995), interpreting Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 131 L. Ed. 2d 76 (1995)).
The parties' operating agreement provides that disputes are subject to binding arbitration under the rules of the American Arbitration Association ("AAA"), the agreement is enforceable under prevailing arbitration law, and any award shall be final. The AAA Rules state in relevant part:
The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association (hereinafter AAA) under its Commercial Arbitration Rules or for arbitration by the AAA of a domestic commercial dispute without specifying particular rules. These rules and any amendment of them shall apply in the form in effect at the time the demand for arbitration or submission agreement is received by the AAA. The parties, by written agreement, may vary the procedures set forth in these rules.
The "Scope of Award" is provided under the rules:
a. The arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract.
b. In addition to a final award, the arbitrator may make other decisions, including interim, interlocutory or partial rulings, orders, and awards. In any interim, interlocutory or partial award, the arbitrator may assess and apportion the fees, expenses and compensation related to such award as the arbitrator determines is appropriate.
c. In the final award, the arbitrator shall assess the fees, expenses, and compensation provided in Sections R-51 [administrative fees], R-52 [expenses], and R-53 [Neutral Arbitrator's compensation]. The arbitrator may apportion such fees, expenses and compensation among the parties in such amounts as the arbitrator determines is appropriate.
d. The award of the arbitrator(s) may include: (a) interest at such rate and from such date as the arbitrator(s) may deem appropriate; and (b) an award of attorneys' fees if all parties have requested such an award or it is authorized by law or their arbitration agreement.
Defendants contend the parties agreed to cap the award at $ 1,000,000, therefore the award in excess of $1,000,000 was an award on a matter not submitted and the trial court properly modified the award. Plaintiff contends there was no agreement to a cap and therefore the award should not have been disturbed.
Defendants' argument is based in part on the AAA's requirement of a non-refundable initial filing fee when a claim is filed. These administrative fees are billed in accordance to a schedule which requires higher fees for claims above certain amounts. For example, claims in an amount above $500,000 to $1,000,000 require an initial filing fee of $6,000. Claims in an amount above $1,000,000 to $7,000,000 require a filing fee of $8,500.
Plaintiff submitted an initial filing fee of $3,250, which is the fee applicable when no amount can be stated at the time of filing. Plaintiff later submitted a letter to the arbitrator estimating the total amount of his claim would be $499,999. A few days before the arbitration hearing, the arbitrator sent a letter informing the parties that the administrative fees for the case limited the parties' recovery. The letter stated in relevant part:
based upon the amount of administrative fees paid by the parties to the [AAA], the claimant's potential recovery on his claims is capped at $500,000. . . . Should either side desire to remove or raise the cap on its potential recovery, it must pay the additional administrative fees to the [AAA] before the close of business next Monday.
The administrator reminded plaintiff about "removing" or "raising" the cap "by paying the additional fee" on the first day of the arbitration hearing. Plaintiff subsequently submitted a check for $4,000 to the AAA indicating the claim was increased from $500,000 to $1,000,000. The arbitrator awarded damages in favor of plaintiff in the amount of $876,408.50 on the UDP claim. Under State law, the UDP claim provides for treble damages which increased the plaintiff's award to $2,629,225.50. Defendants contend the parties' conduct and letters from the arbitrator referencing a "cap" on the amount of award is evidence of an agreement to limit the amount of damages. We note that the parties' operating agreement to arbitrate contains no language limiting the amount of damages. Similarly, the AAA rules contain no language limiting the amount of damages.
"[T]he interpretation of ambiguous contract terms not involving a gateway question of arbitrability is a question for the arbitrators unless the arbitration agreement provides otherwise." WMS, 166 N.C. App. at 362, 602 S.E.2d at 713 (citing PacifiCare Health Sys., Inc. v. Book, 538 U.S. 401, 155 L. Ed. 2d 578 (2003)). [A]bsent clearly restrictive language, an arbitrator must be allowed latitude in fashioning an appropriate remedy. By submitting to arbitration, it is implied that the arbitrator has the power to order an appropriate remedy, even though the contract may be silent as to any specific or general relief the arbitrator may grant. . . . If a contract specifically limits the authority of the arbitrator to grant a particular type of relief, then the remedies are confined to what is stated, but an arbitrator is allowed flexibility in formulating remedies . . . where the contract requiring arbitration was not explicit on the subject of remedies and did not prohibit the arbitrator's use of a specific remedy.
Faison & Gillespie v. Lorant, __ N.C. App. __, __, 654 S.E.2d 47, 53 (2007) (quoting 21 Samuel Williston, A Treatise on the Law of Contracts § 57:111, at 575-76 (Richard A. Lord ed., 4th ed. 2001) (footnotes omitted)).
Although the arbitrator referred to the filing fee as establishing a "cap" on recovery, this is not an unequivocal limit on the parties' damages. Neither the contract requiring arbitration nor the AAA rules specify that recovery would be capped based upon submission of an initial filing fee. The parties' agreement was to arbitrate disputed claims. The UDP claim allowed for treble damages, therefore the arbitrator did not rule on a matter not submitted to him by awarding treble damages, which exceeded $1,000,000. See WMS, 166 N.C. App. at 361, 602 S.E.2d at 712 (treble damages are appropriately measured by actual damages).
Since the arbitrator had the authority to construe the AAA rules to allow the award to exceed $1,000,000, we hold the arbitrator did not award on a matter not submitted to him, and the trial court erred in modifying the award.

B. Interest
Plaintiff also argues the trial court erred in calculating interest from the date of the Post-Appeal Order rather than from the date of the arbitration award. Since we reverse the trial court, interest should be awarded as provided in the arbitration award.See Eisinger v. Robinson, 164 N.C. App. 572, 596 S.E.2d 831 (2004); Palmer v. Duke Power Co., 129 N.C. App. 488, 499 S.E.2d 801 (1998); Lovin v. Byrd, 178 N.C. App. 381, 631 S.E.2d 58 (2006).

IV. Conclusion
For the reasons given, we reverse the post-appeal order and remand for entry of an order confirming the arbitration award as written.
Reversed.
Judges WYNN and GEER concur.
Report per Rule 30(e).