WMS, INC., CELLULAR PLUS OF NORTH CAROLINA, INC., AND DAVID KILPATRICK, PLAINTIFFS V. JERRY W. WEAVER, ALLTEL COMMUNICATIONS, INC., AND ALLTEL COMMUNICATIONS OF THE CAROLINAS, INC., DEFENDANTS

No. COA03-1063

(Filed 5 October 2004)

**1. Arbitration and Mediation— ambiguous arbitration agreement—authority to construe**

The trial court erred by modifying an arbitration panel's award to eliminate treble damages on an unfair trade practices claim where the arbitration agreement was ambiguous and the arbitrators had the authority to construe the remedial provision. Neither the trial court nor the appellate court may vacate the arbitration award based on a disagreement with the arbitrators about the proper construction of the contract's term.

**2. Arbitration and Mediation— attorney fees—issue not raised at arbitration—waived**

Defendant Alltel waived its right to contest an arbitration panel's authority to award attorney fees by not raising the issue at arbitration. Defendant opposed the fees based on whether

they were warranted under N.C.G.S. § 75-16, but did not object to the panel's consideration of the issue despite several opportunities to do so.

Appeal by plaintiff Cellular Plus of North Carolina, Inc. and cross-appeal by defendants Alltel Communications, Inc. and Alltel Communications of the Carolinas, Inc. from the order and judgment entered 24 April 2003 by Judge Ripley E. Rand in Wake County Superior Court. Heard in the Court of Appeals 28 April 2004.

*Herring, McBennett, Mills & Finkelstein, P.L.L.C., by Mark A. Finkelstein and Stephen W. Petersen, for plaintiffs-appellants/cross-appellees.*

*Womble Carlyle Sandridge & Rice, P.L.L.C., by Burley B. Mitchell, Jr., Pressly M. Millen, and Sean E. Andrussier, for defendants-appellees/cross-appellants Alltel Communications, Inc. and Alltel Communications of the Carolinas, Inc.*

GEER, Judge.

This appeal arises out of the challenge of defendants Alltel Communications, Inc. and Alltel Communications of the Carolinas, Inc. (collectively "Alltel") to an arbitration award in favor of plaintiff Cellular Plus of North Carolina, Inc. ("Cellular Plus"). The trial court ruled that the arbitration panel had no authority under the parties' arbitration agreement to award treble damages, but that the panel could properly award attorneys' fees. The parties have each appealed. We hold that the trial court erred in setting aside the treble damages award, but affirm the trial court's ruling as to the attorneys' fees.

## Factual Background

On 19 December 2000, plaintiffs WMS, Inc. ("WMS"), Cellular Plus, and David Kilpatrick filed suit in Wake County Superior Court against defendants Alltel and Jerry W. Weaver, asserting various claims arising out of business dealings between the parties, including a claim for unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1 (2003). Cellular Plus and Alltel had entered into a dealer agreement dated 4 June 1999 (the "Agreement"). Pursuant to the Agreement, Cellular Plus, an independent dealer, agreed to market Alltel's wireless cellular communication services in exchange for payment of commissions by Alltel.

On 8 January 2001, defendants moved to compel arbitration pursuant to the Agreement. Section 16.19 of the Agreement provided:

> Arbitration: (a) Any controversy, dispute, or claim arising out of [or] relating to this contract, the relations between ALLTEL and [Cellular Plus], or the Service provided by ALLTEL, including but not limited to a claim based on or arising from an alleged tort or a dispute as to the applicability of this provision to any dispute, shall be settled by arbitration administered by the American Arbitration Association under its Wireless Industry Arbitration rules. (b) The arbitrator may not vary the terms of the parties' agreement. (c) All statutes of limitations which would otherwise be applicable in a judicial action brought by a party shall apply to any arbitration and shall be given effect by the arbitrators. (d) Judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. (e) The arbitrator shall have no authority to award punitive damages or any other damages not measured by the prevailing party's actual damages, nor shall any party seek punitive damages relating to any matter arising out of this contract in any other forum. (f) All claims shall be arbitrated individually, and there shall be no consolidation or class treatment of any claim. (g) The parties expressly agree that, notwithstanding the foregoing, in the event either party believes the Agreement has been or will be unlawfully terminated and emergency relief is required, such party may apply to the American Arbitration Association therefor under its "Optional Rules for Emergency Measures of Protection."

On 15 February 2001, the trial court entered an order concluding "that all of the claims alleged in the Amended Complaint are governed by the arbitration clause" and directing plaintiffs to "pursue their claims with the American Arbitration Association pursuant to the terms of the arbitration clause[.]"

On 10 October 2002, following an evidentiary hearing, the three-member arbitration panel issued a "Posthearing Order," stating, "[t]he parties have stipulated and the Arbitrators direct" that (1) the hearing would remain open for submission of briefs, oral arguments, and submission of other exhibits; and (2) "[t]o the extent that the Arbitrators may deem it appropriate to make an award of attorneys fees, counsel for the parties will be requested, not later than the close of the oral arguments on November 25, 2002, to submit affidavits with respect to same." In a second "Posthearing Order," dated 26 November 2002, the panel stated that if it found defendants liable under N.C. Gen.

Stat. § 75-1.1, it would enter an interim award by 25 December 2002 "on all issues except for any award of Attorney's fees." If the panel decided that an award of attorneys' fees would be appropriate, the panel would receive affidavits from counsel for all parties on the issue of attorneys' fees and an award would be entered no later than 31 January 2003.

On 23 December 2002, the panel issued an "Interim Award." Pursuant to an agreement between the parties, the Interim Award contained no specific findings of fact. The award dismissed all claims asserted by plaintiffs WMS and Kilpatrick, as well as all claims asserted against defendant Weaver. In the award, the arbitrators concluded that Alltel had breached the Agreement and that Alltel had "engaged in unfair and deceptive acts and practices under Section 75-1.1 of the General Statutes of North Carolina." The arbitrators awarded Cellular Plus damages in the amount of $962,500.00, "said amount to be trebled in accordance with Section 75-16 of the General Statutes . . . to make the award $2,887,500[.]" With respect to attorneys' fees, the interim award provided:

> (7) This award shall be deemed to be an interim award pending consideration by the Panel of Arbitrators of a further award to [Cellular Plus], pursuant to Section 75-16.1 of the General Statutes of North Carolina, allowing a reasonable attorney fee to the attorneys representing [Cellular Plus]. *Pursuant to the consent and stipulation of the parties at the oral arguments held in this case on November 25, 2002,* counsel for [Cellular Plus] and counsel for [Alltel] shall submit to the Panel not later than January 15, 2003, affidavits of said counsel, together with affidavits of third parties having knowledge of facts pertinent to the issue, if any, with respect to (1) the reasonableness of the amount of the attorneys' fees and expenses charged by [Cellular Plus'] counsel as set out in the affidavits submitted to the Panel and to opposing counsel by [Cellular Plus'] counsel on November 25, 2002 and (2) whether there was an unwarranted refusal by [Alltel] to fully resolve the matter constituting the basis of the claims in this case. *Pursuant to the consent and stipulation of the parties at the oral arguments held in this case on November 25, 2002, the Panel will consider and make a decision and an award on said issues based upon said affidavits.* A Final Award in this arbitration proceeding, with respect to attorneys fees, if any, will be entered not later than January 31, 2003.

(Emphasis added)

On 31 January 2003, the arbitrators issued a "Final Award" in which they concluded "that there was an unwarranted refusal by [Alltel] to fully resolve the matter . . . under Section 75-1.1 of the General Statutes[.]" The arbitrators, therefore, awarded Cellular Plus attorneys' fees in the amount of $352,640.00. The Final Award provided that the parties would pay equally the administrative fees and expenses of the American Arbitration Association and the compensation and expenses of the arbitrators totaling $91,515.13.

On 3 February 2003, Alltel filed a motion in Wake County Superior Court, requesting that the court either (1) vacate the arbitrators' interim and final awards "on the grounds that the arbitrators exceeded their powers in awarding [Cellular Plus] treble damages and attorneys' fees," or (2) modify the arbitrators' interim and final awards to eliminate the awards of treble damages and attorneys' fees. On 13 February 2003, Cellular Plus moved the trial court to confirm the arbitrators' interim and final awards.

The trial court concluded, in pertinent part:

5. The arbitration panel did not have the authority under Section 16.19(e) of the parties' Arbitration Agreement to award treble damages to Plaintiffs pursuant to N.C. Gen. Stat. § 75-16 based on the finding of unfair and deceptive trade practices. Plaintiffs do not cite to any evidence that Defendants waived this issue by participating in the arbitration of it, and a review of the arbitration proceedings and the filings in this matter reveal that Defendants did challenge the authority of the arbitration panel to deal with the issue of treble damages at the hearing on that issue.

6. The arbitration panel did not have the authority pursuant to Section 16.19(a) of the parties' Arbitration Agreement and Rules R-41 and R-4[8] of the Wireless Industry Arbitration Rules to award attorneys' fees to Plaintiffs pursuant to N.C. Gen. Stat. § 75-16.1.

7. While as a preliminary matter the arbitration panel did not have the authority noted in CONCLUSION OF LAW # 6 to award attorneys' fees pursuant to the agreement, Defendants waived the right to contest the authority of the arbitration panel to address this matter by fully arguing the attorneys' fees issue before the arbitration panel without contending that the arbitrators lacked authority to decide that issue and without preserving that argument for further judicial review. As such, Defendants have

waived the right to challenge the award of attorneys' fees on judicial review of the award.

Based on these conclusions, the trial court modified the arbitrators' award to provide for an award to Cellular Plus in the amount of $962,500.00 in actual damages. The court declined to alter the award of attorneys' fees. The trial court subsequently denied Cellular Plus' motion pursuant to Rule 59, asking the court to reinstate the treble damages award based on a 7 April 2003 decision of the United States Supreme Court, *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 155 L. Ed. 2d 578, 123 S. Ct. 1531 (2003).

On 30 April 2003, Cellular Plus filed a notice of appeal from the portion of the trial court's order vacating the arbitrators' award of treble damages. On 16 May 2003, Alltel filed its notice of cross-appeal from the portion of the order confirming the arbitrators' award of attorneys' fees. We address Cellular Plus' appeal and Alltel's cross-appeal in turn.

---

Since this appeal arises from a decision on a motion to confirm an arbitration award, we first note "that a strong policy supports upholding arbitration awards." *Cyclone Roofing Co. v. David M. LaFave Co.*, 312 N.C. 224, 234, 321 S.E.2d 872, 879 (1984). As our Supreme Court has stressed:

> "There is no right of appeal and the Court has no power to revise the decisions of 'judges who are of the parties' own choosing.' An award is intended to settle the matter in controversy, and thus save the expense of litigation. If a mistake be a sufficient ground for setting aside an award, it opens the door for coming into court in almost every case; for in nine cases out of ten some mistake either of law or fact may be suggested by the dissatisfied party. Thus . . . arbitration instead of ending would tend to increase litigation."

*Id.* at 236, 321 S.E.2d at 880 (quoting *Carolina-Virginia Fashion Exhibitors, Inc. v. Gunter*, 41 N.C. App. 407, 414-15, 255 S.E.2d 414, 419-20 (1979)).

I

[1] As the trial court recognized, this case presents a preliminary question: Does the Federal Arbitration Act ("FAA") or does the North Carolina Uniform Arbitration Act govern the issues on this appeal? This question cannot be bypassed as the FAA preempts conflicting

state law, including state law addressing the role of courts in reviewing arbitration awards. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 272, 130 L. Ed. 2d 753, 763, 115 S. Ct. 834, 838 (1995). If the FAA requires that a particular question be determined by the arbitrators, while state law would allow a court to address the issue, the FAA controls. We must, therefore, first determine whether the parties' arbitration agreement falls under the FAA.

The FAA governs any "contract evidencing a transaction involving commerce." 9 U.S.C. § 2 (2000). Under *Allied-Bruce*, the FAA's term "involving commerce" is considered the functional equivalent of "affecting commerce." *Allied-Bruce*, 513 U.S. at 277, 130 L. Ed. 2d at 766, 115 S. Ct. at 841. It is broader than the term "in commerce" and "signals an intent to exercise Congress' commerce power to the full." *Id.* The trial court concluded below that the FAA governs in this case. While the parties hedge their bets on appeal, they have not directly challenged the trial court's determination. In addition, we see no basis in the record for any conclusion other than that the contract at issue evidences a transaction involving commerce. The FAA, therefore, controls. As a result, this Court is bound, in deciding this appeal, by decisions of the United States Supreme Court construing and applying the FAA.

The FAA allows a court to vacate an award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4) (2000), *amended by* Act of May 7, 2002, 9 U.S.C.A. § 10(a)(4) (West Supp. 2004). Defendants asked the trial court to vacate the arbitration award in this case on the grounds that the arbitration panel did not have the power, under the parties' contract, to award treble damages. Defendants rely on the provision in their arbitration agreement stating: "The arbitrator shall have no authority to award punitive damages or any other damages not measured by the prevailing party's actual damages, nor shall any party seek punitive damages relating to any matter arising out of this contract in any other forum."

In *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 131 L. Ed. 2d 76, 115 S. Ct. 1212 (1995), the United States Supreme Court addressed an issue almost identical to the one presented here. The defendant in *Mastrobuono* had moved to vacate an arbitration award that included punitive damages, arguing that the arbitrators had, in awarding punitive damages, exceeded their power under the arbitration agreement. The Supreme Court characterized

the question presented as "whether the arbitrators' award is consistent with the central purpose of the [FAA] to ensure 'that private agreements to arbitrate are enforced according to their terms.' " *Id.* at 53-54, 131 L. Ed. 2d at 82, 115 S. Ct. at 1214 (quoting *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479, 103 L. Ed. 2d 488, 500, 109 S. Ct. 1248, 1255-56 (1989)).

The Supreme Court first observed that the parties' contract did not expressly preclude punitive damages. *Id.* at 59, 131 L. Ed. 2d at 85, 115 S. Ct. at 1217. The defendant pointed to two provisions that it contended, when read together, necessarily led to the conclusion that the arbitrators were barred from awarding punitive damages. The Supreme Court, however, concluded that those provisions were not "an unequivocal exclusion of punitive damages claims," *id.* at 60, 131 L. Ed. 2d at 86, 115 S. Ct. at 1217, but rather rendered the arbitration agreement ambiguous, *id.* at 62, 131 L. Ed. 2d at 87, 115 S. Ct. at 1218. The Court then applied the principles that (1) ambiguities as to the scope of an arbitration clause must be resolved in favor of arbitration, and (2) a court should construe ambiguous language in a contract against the interest of the party that drafted it. Based on this analysis, it held that "[t]he arbitral award should have been enforced as within the scope of the contract." *Id.* at 64, 131 L. Ed. 2d at 88, 115 S. Ct. at 1219. The Court accordingly reversed the decision vacating the award. *Id.*

Courts have since interpreted *Mastrobuono* as holding "that arbitrators presumptively enjoy the power to award punitive damages unless . . . the arbitration contract *unequivocally excludes* punitive damages claims." *See, e.g., Gateway Tech., Inc. v. MCI Telecomm. Corp.*, 64 F.3d 993, 999 (5th Cir. 1995) (emphasis added). Under *Mastrobuono*, an arbitrator does not exceed his powers if (1) state law allows the remedy for the specified cause of action, and (2) the arbitration contract does not unequivocally preclude it. *Id.* at 998. When these two requirements are met, the award falls "under the arbitrator's broad discretion to decide damages and fashion remedial relief." *Id.*

There is no dispute in this case that North Carolina law allows an award of treble damages in an unfair and deceptive trade practices case. N.C. Gen. Stat. § 75-16 (2003). Under *Mastrobuono*, we must next determine whether the parties' arbitration agreement unequivocally precludes an award of treble damages.

Although the words "treble damages" do not appear in the parties' agreement, defendants contend that the phrase "any other damages not measured by the prevailing party's actual damages" unambiguously refers to treble damages because, according to defendants, it could not refer to anything else. Since there are a host of damages remedies "not measured by the prevailing party's actual damages," we disagree with defendants' contention.

Statutory remedies are the most prevalent type of such damages. For example, the Copyright Act provides that "[t]he copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, *and any profits of the infringer* that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b) (2000) (emphasis added). Alternatively, the statute permits, upon the copyright owner's election, an award of statutory damages "not less than $750 or more than $30,000 as the court considers just" unless the court finds that the infringement was committed willfully, in which case "the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(1) & (2) (2000). Neither the infringer's profits nor the statutory damages are "damages measured by the prevailing party's actual damages[.]" *See also* 15 U.S.C. § 1117(a) (2000) (authorizing award of both actual damages and the Lanham Act violator's ill-gotten profits); 18 U.S.C. § 2520(c)(2)(A) & (B) (2000) (with respect to any entity's unlawful interception, disclosure, or intentional use of a wire or electronic communication, allowing a court to assess as damages the greater of actual damages and "any profits made by the violator as a result of the violation" or "statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000"); N.C. Gen. Stat. § 66-154(b) (2003) (emphasis added) (for violation of the North Carolina Trade Secrets Protection Act, allowing an award "measured by the economic loss *or the unjust enrichment* caused by misappropriation of a trade secret, whichever is greater").

In addition to statutory remedies not measured by actual damages, defendants have also overlooked restitutionary awards. As this Court has explained:

"The restitution claim, on the other hand, is not aimed at compensating the plaintiff, but at forcing the defendant to disgorge benefits that it would be unjust for him to keep." A plaintiff may receive a windfall in some cases, but this is acceptable in order to

avoid any unjust enrichment on the defendant's part. The principle of restitution "is to deprive the defendant of benefits that in equity and good conscience he ought not to keep . . . even though plaintiff may have suffered no demonstrable losses."

*Booher v. Frue*, 86 N.C. App. 390, 393-94, 358 S.E.2d 127, 129 (1987) (internal citations omitted; quoting D. Dobbs, *Law of Remedies*, § 4.1, at 224 (1973)), *aff'd per curiam*, 321 N.C. 590, 364 S.E.2d 141 (1988). For example, damages awarded under a theory of restitution may be measured by the increased value of the assets unlawfully in the hands of the defendant or by the profits earned by the defendant. 1 Dan B. Dobbs, *Dobbs Law of Remedies* § 4.1(4), at 566-67 (2d ed. 1993). Neither of these types of damages are measured by a plaintiff's actual damages.

Finally, defendants have also overlooked "presumed damages." In a defamation *per se* case, under appropriate circumstances (as dictated by First Amendment considerations), some courts have held a plaintiff may recover "presumed damages" without proof of actual damages. Thus, in *Brown & Williamson Tobacco Corp. v. Jacobson*, 827 F.2d 1119, 1142 (7th Cir. 1987), *cert. denied*, 485 U.S. 993, 99 L. Ed. 2d 512, 108 S. Ct. 1302 (1988), the Seventh Circuit held that a tobacco company was entitled to $1,000,000.00 in presumed damages despite its inability to prove that it had suffered any actual loss or other actual damages.[1]

This summary of available "damages" remedies demonstrates a wide variety of damages awards that would fall within the scope of the disputed phrase. The question remains, however, whether "treble damages" also unequivocally falls within the scope of the phrase.

Plaintiffs argue that because treble damages are a multiple of actual damages, they are "measured by" actual damages. This is a reasonable construction. Courts have routinely referred to treble damages as being measured by actual damages. *See, e.g., Square D Co. v. Niagara Frontier Tariff Bureau, Inc.*, 476 U.S. 409, 415, 90 L. Ed. 2d 413, 420, 106 S. Ct. 1922, 1926 (1986) ("The shipper claimed treble damages measured by the difference between the rates set pursuant

---

1. Plaintiff has also suggested that nominal damages fall within the scope of "damages not measured by the prevailing party's actual damages." Since nominal damages tend to be in the amount of $1.00, it seems unlikely that the parties had nominal damages in mind when they entered into the agreement. Nevertheless, we note that the New Mexico Supreme Court has affirmed an award of $5,000.00 in "nominal damages." *Ruiz v. Varan*, 110 N.M. 478, 483-84, 797 P.2d 267, 272-73 (1990). Such an award is not, of course, measured by actual damages.

to agreement and those that had previously been in effect."); *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 485-86, 50 L. Ed. 2d 701, 710, 97 S. Ct. 690, 696 (1977) ("It nevertheless is true that the treble-damages provision, which . . . measures the awards by a multiple of the injury actually proved, is designed primarily as a remedy."); *Moore v. Radian Group, Inc.*, 233 F. Supp. 2d 819, 826 (E.D. Tex. 2002) ("[A] private plaintiff would have standing to sue for treble damages measured by that portion of a PMI payment that is excessive . . . ."), *aff'd*, 69 Fed. Appx. 659 (5th Cir. 2003); *In re Chlorine & Caustic Soda Antitrust Litigation*, 116 F.R.D. 622, 626 (E.D. Pa. 1987) ("Plaintiffs seek to recover treble damages from defendants measured by the alleged overcharge resulting from defendants' conspiracy to fix prices."). Plaintiffs also reasonably suggest that if the parties truly had intended to limit damages only to actual damages, the contract would simply say "the arbitrator shall have no authority to award damages in excess of actual damages." Given the unusual phrasing of the provision and the fact that courts have previously described "treble damages" as being measured by actual damages, we hold both that plaintiff's interpretation is plausible and that, in any event, there is no unequivocal exclusion of treble damages, as required by *Mastrobuono*.

This discussion is not meant to conclude that plaintiff's construction of the disputed phrase is correct. It is simply a reasonable one, as is defendants'. When a contract is " 'fairly and reasonably susceptible to either of the constructions asserted by the parties[,]' " then it is deemed ambiguous. *Barrett Kays & Assocs., P.A. v. Colonial Bldg. Co.*, 129 N.C. App. 525, 528, 500 S.E.2d 108, 111 (1998) (quoting *Bicket v. McLean Sec., Inc.*, 124 N.C. App. 548, 553, 478 S.E.2d 518, 521 (1996)). If ambiguous, then " 'interpretation of the contract is for the jury.' " *Id.* (quoting *Int'l Paper Co. v. Corporex Constructors, Inc.*, 96 N.C. App. 312, 317, 385 S.E.2d 553, 556 (1989). Here, it is necessary to determine whether the question should be resolved by the arbitrators, who were the triers-of-fact, or by the courts.

*Mastrobuono* suggests that a conclusion that the contract term is ambiguous should lead to the holding that the arbitrators did not exceed their powers. More recent cases by the United States Supreme Court support this view of *Mastrobuono* by holding that the interpretation of ambiguous contract terms not involving a gateway question of arbitrability is a question for the arbitrators unless the arbitration agreement provides otherwise. In *PacifiCare Health Sys., Inc. v.*

*Book,* 538 U.S. 401, 155 L. Ed. 2d 578, 123 S. Ct. 1531 (2003), plaintiffs argued that they could not be compelled to arbitrate claims arising under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 (2000), because their arbitration agreement with the defendant prohibited an arbitrator from awarding treble damages. After observing that the terms of the contract—precluding an award of "punitive damages" or "extra contractual damages of any kind"— were ambiguous when applied to treble damages, the Court held that the question "whether the remedial limitations at issue here prohibit an award of RICO treble damages is not a question of arbitrability." *PacifiCare,* 538 U.S. at 407 n.2, 155 L. Ed. 2d at 584 n.2, 123 S. Ct. at 1536 n.2. The Court, therefore, declined to address the issue when it had not first been considered by the arbitrator. *Id.* at 407, 155 L. Ed. 2d at 583, 123 S. Ct. at 1536.

*PacifiCare* was followed by *Green Tree Fin. Corp. v. Bazzle,* 539 U.S. 444, 156 L. Ed. 2d 414, 123 S. Ct. 2402 (2003). In *Green Tree,* the Court was presented with the question whether an arbitration agreement barred class arbitration. The Court held that it could not resolve the question "because it is a matter for the arbitrator to decide." *Id.* at 447, 156 L. Ed. 2d at 419, 123 S. Ct. at 2405. The Court explained:

> Under the terms of the parties' contracts, the question—whether the agreement forbids class arbitration—is for the arbitrator to decide. The parties agreed to submit to the arbitrator "*all* disputes, claims, or controversies arising from or relating to this contract or the relationships which result from this contract." And the dispute about what the arbitration contract in each case means (*i.e.,* whether it forbids the use of class arbitration procedures) is a dispute "relating to this contract" and the resulting "relationships." Hence the parties seem to have agreed that an arbitrator, not a judge, would answer the relevant question.

*Id.* at 451-52, 156 L. Ed. 2d at 422, 123 S. Ct. at 2407 (internal citations omitted). The Court acknowledged, however, that questions of arbitrability—such as the validity of an arbitration clause or its applicability to the underlying dispute between the parties—were questions to be decided by the courts. *Id.* at 452, 156 L. Ed. 2d at 422-23, 123 S. Ct. at 2407.

In this case, as in *Green Tree,* the parties agreed broadly that "[a]ny controversy, dispute, or claim arising out of [or] relating to this contract, the relations between ALLTEL and Agent, or the Service

provided by ALLTEL . . . shall be settled by arbitration . . . ." The inter-
pretation of the provision precluding an award of "damages not mea-
sured by the prevailing party's actual damages" is a dispute "relating
to this contract" and, by the terms of the arbitration agreement, must
be "settled by arbitration." The issue does not fall into the narrow
exception recognized in *Green Tree* because *PacifiCare* has already
held that interpretation of a remedies provision "is not a question of
arbitrability." *PacifiCare*, 538 U.S. at 407 n.2, 155 L. Ed. 2d at 584 n.2,
123 S. Ct. at 1536 n.2.

Defendants have argued that *Green Tree* is not binding because it
is a four-judge plurality opinion. We are, however, still bound to fol-
low *Green Tree*, as the Supreme Court indicated in *Hughes Elecs.
Corp. v. Garcia*, 540 U.S. 801, 157 L. Ed. 2d 12, 124 S. Ct. 102 (2003)
("Judgment vacated, and case remanded to the Court of Appeal of
California, . . ., for further consideration in light of *Green Tree Fin.
Corp. v. Bazzle*, 539 U.S. [444], 156 L. Ed. 2d 414, 123 S. Ct. 2402
(2003)."). Moreover, the federal courts have found the plurality opin-
ion to be the controlling precedent since it represents the position
taken by the justices who concurred on the narrowest grounds. *See,
e.g., Pedcor Mgmt. Co. v. Nations Personnel of Texas, Inc.*, 343 F.3d
355, 358-59 (5th Cir. 2003). The Fifth Circuit explained, *id.* at 358, that
Justice Stevens' concurrence was not the narrowest ground and that
Justice Stevens had, in any event, stated that "arguably the interpre-
tation of the parties' agreement should have been made in the first
instance by the arbitrator, rather than the court," and that "Justice
Breyer's opinion expresses a view of the case close to my own."
*Green Tree*, 539 U.S. at 455, 156 L. Ed. 2d at 424, 123 S. Ct. at 2408-09.

Additionally, defendants contend that *Green Tree* does not apply
to appeals from arbitration awards, but rather is only applicable in
the context of a motion to compel arbitration. Defendants have, how-
ever, overlooked the fact that *Green Tree* was an appeal from the
South Carolina Supreme Court's affirmance in two separate cases of
a trial court's confirmation of an arbitration award. In one of the
cases, the trial court had certified a class action and then compelled
arbitration resulting in a class award, while in the second case, the
question of class certification was initially decided by the arbitrator.
On appeal, the South Carolina Supreme Court construed the arbitra-
tion agreements to authorize class arbitration. The United States
Supreme Court vacated the judgments because, as explained above,
the decision regarding class certification was a question for the
arbitrator. Even though a class had been certified in one case by the

arbitrator, the Court ruled that because the arbitrator's determination followed the earlier trial court decision,

> there is at least a strong likelihood . . . that the arbitrator's decision reflected a court's interpretation of the contracts rather than an arbitrator's interpretation. That being so, we remand the case so that the arbitrator may decide the question of contract interpretation—thereby enforcing the parties' arbitration agreements according to their terms.

*Id.* at 454, 156 L. Ed. 2d at 423-24, 123 S. Ct. at 2408. In other words, if the arbitrator had made his decision completely independently of the courts, as here, the award would have been confirmed. The procedural posture of this case does not materially differ from that of *Green Tree.*

Even if *Green Tree* is disregarded, *Carteret County v. United Contractors of Kinston, Inc.,* 120 N.C. App. 336, 347, 462 S.E.2d 816, 823 (1995), compels the conclusion that our courts have no authority to vacate the arbitration award of treble damages. In *United Contractors,* plaintiff asked the trial court to vacate an arbitration award on the grounds that the parties' contract prohibited the arbitrator's award of increased overhead expenses. In rejecting this argument, this Court reasoned:

> In this case, the arbitration agreement reads: "Any controversy or Claim arising out of or related to the Contract, or the breach thereof, shall be settled by arbitration . . . ." . . . Here, whether defendant would be entitled to increased overhead expenses due to the extension of the contract completion date is an issue arising out of the contract and falls within the scope of the arbitration agreement. Since the arbitrators had the power to rule on the issue, even if they erroneously considered evidence of increased overhead expenses it would not be ground to vacate the award.

*Id.* Although this decision construes N.C. Gen. Stat. § 1-567.13(a)(5) (2001)[2] and not the FAA, it is consistent with *Green Tree.*

---

2. Although the General Assembly has repealed N.C. Gen. Stat. § 1-567.13 through § 1-567.20, *see* Act to Repeal the Uniform Arbitration Act and to Enact the Revised Uniform Arbitration Act, ch. 345, sec. 1, 2003 N.C. Sess. Laws 973 (July 14, 2003), the statutory changes affect only arbitration agreements made on or after 1 January 2004. *See id.,* ch. 345, sec. 4, 2003 N.C. Sess. Laws 983.

We hold that the parties' arbitration agreement with its remedial limitation is ambiguous and that the arbitrators, therefore, had the authority to construe that provision. Neither the trial court nor this Court may vacate the arbitration award based on a disagreement with the arbitrators about the proper construction of the contract's term. Accordingly, we hold that the trial court erred in modifying the arbitrators' award to eliminate the award of treble damages.

II

[2] Alltel cross-appeals from the portion of the trial court's order confirming the arbitrators' award to Cellular Plus of $352,640.00 in attorneys' fees. As noted above, although the trial court concluded that the arbitration panel did not have the authority under the agreement to award attorneys' fees, it ruled that Alltel had waived the right to contest the authority of the arbitration panel by failing to argue to the arbitrators that they lacked authority to award fees. Because we agree with the trial court's determination that Alltel waived its right to contest the arbitration panel's authority to award attorneys' fees, we need not decide whether an award of attorneys' fees was permitted by the parties' agreement.

Our review of the record reveals that at arbitration, Alltel opposed Cellular Plus' application for attorneys' fees solely on the basis that such an award was not warranted under N.C. Gen. Stat. § 75-16.1 (2003). In the arbitration proceeding, Alltel never raised the issue whether the panel lacked authority to award fees and never objected to the panel's consideration of such an award, despite several clear opportunities to do so. First, one of the arbitrators stated at the conclusion of the evidence that the panel intended to consider awarding attorneys' fees. Second, the arbitrators' Posthearing Order indicated that they "may deem it appropriate to make an award of attorneys fees[.]" Finally, the arbitrators, in their interim award, instructed the parties to submit affidavits "with respect to (1) the reasonableness of the amount of the attorneys' fees . . . and (2) whether there was an unwarranted refusal by [Alltel] to fully resolve the matter[.]" This interim award stated that the arbitrators would consider these affidavits, and "[p]ursuant to the *consent and stipulation* of the parties . . . will consider and make a decision and an award [regarding attorneys' fees] . . . based upon said affidavits." (Emphasis added) Significantly, at the conclusion of its memorandum in opposition to Cellular Plus' application for attorneys' fees, Alltel implored the arbitration panel to "*exercise its discretion* to award [Cellular Plus] no attorneys' fees under N.C.G.S. § 75-1.1." (Emphasis added)

Defendants rely upon *Nucor Corp. v. General Bearing Corp.*, 333 N.C. 148, 423 S.E.2d 747 (1992). In *Nucor*, our Supreme Court held that "[t]he specific, uncomplicated language of N.C.G.S. § 1-567.11 clearly reflects the legislative intent that attorneys' fees are not to be awarded for work performed in arbitration proceedings, unless the parties specifically agree to and provide for such fees in the arbitration agreement." *Id.* at 153-54, 423 S.E.2d at 750.[3] Defendants argue that since the arbitration agreement at issue in this case did not specifically permit attorneys' fees, *Nucor* required that the trial court vacate the arbitrators' award of fees.

*Nucor* did not address the situation when, as here, both parties have consented to consideration of the attorneys' fee issue by the arbitration panel and no party lodged any objection to the panel's awarding fees. Indeed, to agree with defendants' argument, we would have to disregard the policies upon which *Nucor* is based, as well as established North Carolina authority barring a party from raising objections in confirmation proceedings that could have been, but were not, raised prior to or during the arbitration proceeding.

In *Nucor*, the Supreme Court reached its holding in reliance upon "important policy considerations," including promotion of the purpose of arbitration "to provide and encourage an expedited, efficient, relatively uncomplicated, alternative means of dispute resolution, with limited judicial intervention or participation, and without the primary expense of litigation—attorneys' fees." *Id.* at 154, 423 S.E.2d at 750. As support, the Court cited *Cyclone Roofing*, discussed above, *McNeal v. Black*, 61 N.C. App. 305, 300 S.E.2d 575 (1983), and *Thomas v. Howard*, 51 N.C. App. 350, 276 S.E.2d 743 (1981).

In *McNeal*, this Court held that a party's "participation in the arbitration without making any protest or demand for jury trial . . . waived any right to object to the award later on these grounds." 61 N.C. App. at 307, 300 S.E.2d at 577. The Court noted that "[a] party may waive a constitutional as well as a statutory benefit by express consent, by failure to assert it in apt time, or by conduct inconsistent with a purpose to insist upon it." *Id.* Based on these principles and the purpose of arbitration to reach a final settlement of disputed matters without litigation, the Court held that a party "cannot be allowed to participate in arbitration, raising no objections, and then refuse to be bound

3. N.C. Gen. Stat. § 1-567.11 (2001) states: "Unless otherwise provided in the agreement to arbitrate, the arbitrators' expenses and fees, together with other expenses, not including counsel fees, incurred in the conduct of the arbitration, shall be paid as provided in the award."

by an adverse award. This type of conduct would serve to defeat the purpose of arbitration." *Id.* at 308, 300 S.E.2d at 577. In *Thomas*, this Court held, applying identical reasoning, that a party could not seek to vacate an arbitration award based on the bias of an arbitrator if the party, knowing of the grounds for disqualification, did not object at the arbitration proceeding. 51 N.C. App. at 353-54, 276 S.E.2d at 746.

Likewise, in *Andrews v. Jordan*, 205 N.C. 618, 172 S.E. 319 (1934), the Supreme Court held that the defendants waived any objection to the arbitrators' failure to comply with statutorily prescribed deadlines. The Court noted that defendants were notified of the hearing dates, made no objection and, indeed, agreed to those dates. *Id.* at 624, 172 S.E. at 322. In concluding that the defendants had waived any right to attack the award, the Court held " 'if the parties participate in the arbitral hearing without objection to the point that a time limitation has expired it will be held generally that they have thereby waived the time provision.' " *Id.* (quoting Wesley A. Sturges, *Commercial Arbitration and Awards*, at 524-25 (1930)).

Here, there is no question that defendants could have argued to the arbitrators that the parties' agreement together with *Nucor* precluded any award of attorneys' fees. Instead of doing so, they litigated plaintiff's entitlement to fees. We can see no meaningful distinction between a failure to object to an award of attorneys' fees and a failure to object to arbitration generally, to the timeliness of the hearing dates, or to the bias of an arbitrator. If, as our courts have held, a failure to object during arbitration regarding these significant matters leads to waiver, then defendants here necessarily waived any right to seek vacation of the attorneys' fee award. *See also McDaniel v. Bear Stearns & Co.*, 196 F. Supp. 2d 343, 364-65 (S.D.N.Y. 2002) (internal citations omitted) ("Courts have held that, consistent with [N.Y. C.P.L.R. § 7513], arbitrators *may* award attorneys' fees if either (1) the parties' agreement to arbitrate so provides, or (2) the parties acquiesce to the payment of attorneys' fees . . . . Although [defendant] argued that its actions did not warrant a sanction, it never raised a *legal objection* to the award of attorneys' fees. Because [defendant] never maintained, as it does here, that attorneys' fees are unlawful, it implicitly conceded that it was within the Panel's authority to award such fees.").[4] *Cf. Wood v. Weldon*, 160 N.C. App. 697, 699, 586 S.E.2d 801, 803 (2003) (noting that it is well settled in this jurisdiction that any contention not raised and argued in the trial court may not be

---

4. N.Y. C.P.L.R. § 7513 is identical to N.C. Gen. Stat. § 1-567.11.

raised and argued for the first time in an appellate court), *disc. review denied*, 358 N.C. 550, 600 S.E.2d 469 (2004). We therefore hold that the trial court properly confirmed the arbitrators' award of attorneys' fees.

Reversed in part and affirmed in part.

Judges BRYANT and ELMORE concur.