**HOLMES v. SOLON AUTOMATED SERVS.**

[231 N.C. App. 44 (2013)]

CAROLYN G. HOLMES, WIDOW AND ADMINISTRATOR OF THE ESTATE OF
WASHINGTON D. HOLMES, DECEASED EMPLOYEE, PLAINTIFF
v.
SOLON AUTOMATED SERVICES, EMPLOYER, SPECIALITY RISK SERVICES, INC.,
CARRIER, DEFENDANTS

No. COA13-325

Filed 3 December 2013

1. **Workers' Compensation—cost of annuity—condition precedent—failure to survive**

   The Industrial Commission did not err in a workers' compensation case by concluding that plaintiff wife was not entitled to receive from defendants $93,994.39 for the cost of an annuity. As plaintiff husband did not survive a single year, he failed to meet an explicit condition precedent in the mediated settlement contract.

2. **Workers' Compensation—mediated settlement agreement—seed money**

   The Industrial Commission erred in a workers' compensation case by failing to require defendants to pay plaintiff wife $19,582.37 that would have been used as seed money for the mediated settlement agreement. It would have been inequitable for defendants to keep the $19,582.37, despite the purpose of the agreement being frustrated, since the agreement did not condition payment of this sum upon Mr. Holmes' continued survival.

Appeal by plaintiff from Opinion and Award entered 21 November 2012 by the North Carolina Industrial Commission. Heard in the Court of Appeals 29 August 2013.

*Lennon, Camak & Bertics, PLLC, by George W. Lennon and Michael W. Bertics, for plaintiff-appellant.*

*Lewis & Roberts, P.L.L.C., by Winston L. Page, Jr., for defendant-appellee.*

STROUD, Judge.

Plaintiff appeals an opinion and award of the North Carolina Industrial Commission denying "Plaintiff's request that the Commission enforce the provisions of the Mediated Settlement Agreement which

relate to the funding by Defendants of a Medicare Set-Aside Account[.]" For the following reasons, we affirm in part and reverse in part.

## I. Background

On 21 November 2012, the North Carolina Industrial Commission issued an opinion and award in this matter. The basic facts of the situation are uncontested. Washington D. Holmes was an employee of defendant Solon Automated Services who sustained a compensable injury on 16 May 1990, for which he received workers' compensation benefits. On 26 August 2010, Mr. Holmes and defendants engaged in a voluntary mediation, and they "entered into an agreement to settle" Mr. Holmes' claim. This "agreement was memorialized in an Industrial Commission Form MSC8 Mediated Settlement Agreement ("Agreement") which was signed by all parties."

In the Agreement, in consideration of the payments to be made by defendants, Mr. Holmes "waived the right to any further benefits under the Act" arising from his 16 May 1990 injury. Defendants agreed to pay the following:

  a.  $250,000.00;

  b.  Mediator's fees;

  c.  "[A]ll authorized medical expenses to the date of the mediation[;]"

  d.  Funding of "a Medicare Set-Aside Allocation ('MSA') in the amount of $186,032.51, with '$19,582.37 seed money for the Medicare Set Aside for the benefit of Washington Holmes' and payments of '9,247.23 annually beginning on September 15, 2011, payable 18 years only if Washington Holmes is living.' "

The defendants were to purchase an annuity to make the annual payments. "The portion of the Mediated Settlement Agreement relating to the Medicare Set Aside further provides, 'Non-surgical medical bills will be paid to date of CMS approval.' " The Agreement also provided that " 'The Employee understands and agrees that the monies in the Medicare Set-Aside Account will be used for the sole purpose of paying future medical expenses related to his injury which would otherwise be paid for by Medicare.' " The seed money and annual payments "with which Defendants were to fund the Medicare Set-Aside Account [were] derived from a Medicare Set-Aside Summary prepared by Gould & Lamb" and "the factors used in the calculation of the Medicare Set-Aside include[d

Mr. Holmes'] life expectancy, which Gould & Lamb calculated to be 19 years, and his anticipated medical care, physical therapy and medication costs."

After the mediation, counsel for the parties "began drafting a settlement agreement[,]" but Mr. Holmes "died unexpectedly of pneumonia on October 24, 2010[,]" before the settlement agreement was completed.[1] Plaintiff, Mr. Holmes' widow, was substituted as plaintiff in this action. On 15 December 2010, defendants paid the $250,000.00 required by the Agreement to plaintiff "pursuant to an Administrative Order entered by Executive Secretary Tracey H. Weaver[.]" But defendants refused to pay any sums under the Agreement regarding the Medicare Set-Aside Account, stating:

> On December 30, 2010, Plaintiff filed an Industrial Commission Form 33 Request for hearing seeking payment of the Medicare Set-Aside funds set forth in the Mediated Settlement Agreement. Defendants contend they are not obligated to pay the seed money or the annual payments to a Medicare Set-Aside Account as set forth in the Mediated Settlement Agreement.

The Commission denied "Plaintiff's request that the Commission enforce the provisions of the Mediated Settlement Agreement which relate to the funding by Defendants of a Medicare Set-Aside Account[.]" The Commission based its determination upon the following rationale:

> 9. Pursuant to the Medicare Secondary Payer Act, the burden of future medical expenses arising from a workers' compensation case may not be shifted to Medicare. For this reason, the Act requires that Medicare's interest be considered in workers' compensation settlements which take into account future medical expenses.
>
> 10. As in the instant case, protecting Medicare's interest may be accomplished through the establishment of a Medicare Set-Aside Account. Medicare will not pay for any expenses related to the workers' compensation injury until the monies contained in the Medicare Set-Aside Account are exhausted. To this end, the Settlement

---

1. Plaintiff has not brought any claim for death benefits under North Carolina General Statute § 97-38. Plaintiff's claim is based solely upon the Agreement.

Agreement drafted by the parties in this case provides, "The Employee understands and agrees that the monies in the Medicare Set-Aside Account will be used for the sole purpose of paying future medical expenses related to his injury which would otherwise be paid for by Medicare."

. . . .

12. Based upon the preponderance of the evidence in view of the entire record, the Full Commission finds that the parties' purpose in agreeing to establish a Medicare Set-Aside Account was to comply with the mandate of the Medicare Secondary Payer Act to protect Medicare from bearing the burden of future medical expenses arising from this workers' compensation case. This purpose was to be accomplished through the funding by Defendants of the Medicare Set-Aside Account with monies which were to be used by Deceased-Employee for "the sole purpose of paying future medical expenses related to his injury which would otherwise be paid for by Medicare."

13. The Full Commission further finds that an implied condition in the agreement to establish a Medicare Set-Aside Account was that Deceased-Employee be living, and, in effect, capable of incurring future medical expenses, at the time the Medicare Set-Aside Account was established through the deposit of the seed money. As medical bills could be incurred during Decedent-Employee's lifetime, his death prior to the establishment of the Medicare Set-Aside Account frustrated the parties' purpose in agreeing to establish the Account, namely, to protect Medicare from bearing the burden of future medical expenses arising from this workers' compensation case.

14. Specifically with regard to the annual payments to be made by Defendants to the Medicare Set-Aside Account set forth in the Settlement Proposal, the Full Commission finds, that, not only was the purpose of these payments frustrated by Decedent-Employee's death as set forth above, but also, the contingency of Decedent-Employee being alive as of the due date of the annual payment has not been satisfied as Decedent-Employee died on October 24, 2010, before the first annual payment came due.

15. For the foregoing reasons, the Full Commission finds that Defendants are not required to pay the seed funds or the annual payments to a Medicare Set-Aside as detailed in the Mediated Settlement Agreement.

The Commission concluded,

1. Compromise settlement agreements, including mediated settlement agreements [in Workers' Compensation cases], are governed by general principles of contract law.[] *Roberts v. Century Contractors, Inc.*, 162 N.C. App. 688, 592 S.E.2d 215 (2004) (quoting *Lemly v. Colvald Oil Co.*, 157 N.C. App. 99, 577 S.E.2d 712 (2003)).

2. Addressing the doctrine of frustration of purpose in *Brenner v. Little Red School House, Ltd*, the North Carolina Supreme Court quoted 17 Am.Jur.2d Contracts § 401 (1964) as follows:

> Changed conditions supervening during the term of a contract sometimes operate as a defense excusing further performance on the ground that there was an implied condition in the contract that such a subsequent development should excuse performance or be a defense, and this kind of defense has prevailed in some instances even though the subsequent condition that developed was not one rendering performance impossible. . . . In such instances, . . . the defense doctrine applied has been variously designated as that of "frustration" of purpose or object of the contract or "commercial frustration."
>
> Although the doctrines of frustration and impossibility are akin, frustration is not a form of impossibility of performance. It more properly relates to the consideration of performance. Under it performance remains possible, but is excused whenever a fortuitous event supervenes to cause a failure of the consideration or a practically total destruction of the expected value of the performance.

302 N.C. 207, 211, 274 S.E.2d 206, 209 (1981). The doctrine of frustration of purpose is not applicable where the frustrating event is reasonably foreseeable. *Id.*

**HOLMES v. SOLON AUTOMATED SERVS.**

[231 N.C. App. 44 (2013)]

3. In the instant case, it was an implied condition of the portion of the Mediated Settlement Agreement concerning the Medicare Set-Aside that Decedent-Employee be living at the time the Medicare Set-Aside Account was established. *Id.* Decedent-Employee's supervening, unexpected death prior to the establishment of the Medicare Set-Aside Account through the depositing of the seed money, destroyed the expected value of the performance, namely, protecting Medicare from bearing the burden of future medical expenses incurred by Decedent-Employee arising from this workers' compensation case. *Id.*

4. Defendants could not have reasonably foreseen Plaintiff's unexpected death from pneumonia prior to the establishment of the Medicare Set-Aside Account. *Id.*

5. Based upon the foregoing, the Full Commission concludes that Decedent-Employee's death operates as a defense excusing Defendants from performance of that portion of the Mediated Settlement Agreement which concerns the Medicare Set-Aside Account. *Id.*

6. Neither party prosecuted or defended this claim without reasonable grounds. Therefore, neither party is not [sic] entitled to an award of attorney's fees under N.C. Gen. Stat. § 97-88.1.

Ultimately, the Commission ordered:

1. Plaintiff's request that the Commission enforce the provisions of the Mediated Settlement Agreement which relate to the funding by Defendants of a Medicare Set-Aside Account is hereby DENIED.

2. The parties shall bear their own costs.

Plaintiff appeals.

## II. Standard of Review

The standard of review in workers' compensation cases has been firmly established by the General Assembly and by numerous decisions of this Court. Under the Workers' Compensation Act, the Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony. Therefore, on appeal from an

award of the Industrial Commission, review is limited to consideration of whether competent evidence supports the Commission's findings of fact and whether the findings support the Commission's conclusions of law. This [C]ourt's duty goes no further than to determine whether the record contains any evidence tending to support the finding.

*Richardson v. Maxim Healthcare/Allegis Grp.*, 362 N.C. 657, 660, 669 S.E.2d 582, 584 (2008) (citations, quotation marks, and brackets omitted).

### III. The Medicare Set-Aside Account

The essential facts of this case are not in contention. Furthermore, most of the terms of the Agreement have either been performed or are not contested before this Court: Defendants paid the $250,000.00, and none of the parties make any arguments regarding the "mediator's fees" or the "authorized medical expenses to the date of the mediation." Accordingly, all that is left for this Court to consider regarding the performance of the contract is the funding of "a Medicare Set-Aside Allocation ('MSA') in the amount of $186,032.51, with '$19,582.37 seed money for the Medicare Set Aside for the benefit of Washington Holmes' and payments of '9,247.23 annually beginning on September 15, 2011, payable 18 years only if Washington Holmes is living.' " As to the MSA, the Commission concluded that the doctrine of frustration of purpose applied to discharge defendant's performance of the Agreement. Neither plaintiff nor defendant assert that the Commission was incorrect in applying the doctrine of frustration of purposes; rather, plaintiff essentially contends that even when a defense of frustration of purpose applies, she is still entitled to restitution.

We can find no case law in North Carolina which directly supports an award of restitution following discharge of a contract based upon frustration of purpose. Yet there is case law supporting the proposition that restitution is an appropriate remedy in a case where performance of the contract is rendered impossible. *See Shelton v. Tuttle Motor Co.*, 223 N.C. 63, 68, 25 S.E.2d 451, 454 (1943) ("One who has paid for goods he never gets is entitled to recover the payment, even though the reason why performance was not made by the seller is excusable impossibility. The Act of God may properly lift from his shoulders the burden of performance, but has not yet extended so as to enable him to keep the other man's property for nothing." (citations and quotation marks omitted)). Furthermore, the Restatement (Second) of Contracts provides that restitution is an appropriate remedy following discharge of a

contract by either the defenses of frustration of purpose or impossibility. *See* Restatement (Second) of Contracts § 377 (1981) ("A party whose duty of performance does not arise or is discharged as a result of impracticability of performance, frustration of purpose, non-occurrence of a condition or disclaimer by a beneficiary is entitled to restitution for any benefit that he has conferred on the other party by way of part performance or reliance.") Lastly, defendants have not made any arguments that restitution is an inappropriate remedy where the purpose of a contract has been frustrated.

In the circumstances presented by this case, whether impossibility or frustration of purpose is the correct defense, it seems that the remedy is the same, so we believe that any attempt we might make to distinguish the two as to this case would simply be frustrating for the reader, and perhaps impossible to understand. We can find no legal distinction between considering restitution as a remedy for a contract that has been not fully performed either due to frustration of purpose or impossibility, so we conclude that restitution may be a proper remedy for plaintiff in light of the Commission's uncontested determination that the purpose of the parties' contract was frustrated. *See generally Shelton,* 223 N.C. at 68, 25 S.E.2d at 454; see also Restatement (Second) of Contracts § 377.

Plaintiff argues that she is entitled to restitution under the Agreement, in the amount of $113,576.76, which includes the $19,582.37 seed money as well as the sum of $93,994.39, which was the cost of the annuity which defendants were to purchase to pay for Mr. Holmes' ongoing medical expenses for 18 years, so long as he was living; plaintiff argues that allowing defendants to retain these funds would unjustly enrich them at her expense.

> Unjust enrichment has been defined as a legal term characterizing the result or effect of a failure to make restitution of, or for, property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account therefor. A claim of this type is described as a claim in quasi contract or a contract implied in law.

*Rev O, Inc. v. Woo,* ___ N.C. App. ___, ___, 725 S.E.2d 45, 49 (2012) (citation, quotation marks, and ellipses omitted).

> The restitution claim . . . is not aimed at compensating the plaintiff, but at forcing the defendant to disgorge benefits that it would be unjust for him to keep. A plaintiff may receive a windfall in some cases, but this is acceptable in order to avoid any unjust enrichment on the defendant's

part. The principle of restitution is to deprive the defen-
dant of benefits that in equity and good conscience he
ought not to keep even though plaintiff may have suffered
no demonstrable losses.

*WMS, Inc. v. Weaver*, 166 N.C. App. 352, 360-61, 602 S.E.2d 706, 711-12
(citation, quotation marks, and ellipses omitted), *disc. review denied*,
359 N.C. 197, 608 S.E.2d 330 (2004).

A.   Cost of the Annuity

[1] As to the cost of the annuity, plaintiff contends that defendants
received a windfall as they have not paid the $93,994.39 for the purchase
of the annuity to fund the MSA. However, the Agreement specifically
provided that plaintiff should only benefit from the annuity for each year
he remained alive. The Agreement stated, "$9,247.23 annually beginning
on September 15, 2011, payable 18 years only if Washington Holmes is
living[.]" The cost of the annuity to defendant was $93,994.39, but plain-
tiff received no guaranteed benefit from the annuity. Plaintiff could
receive a maximum of $166,450.14, but only if he survived 18 years.

As plaintiff did not survive a single year, we conclude that plaintiff
failed to meet an explicit condition precedent in the contract, survival.
*See Handy Sanitary Dist. v. Badin Shores Resort*, ___ N.C. App. ___,
___, 737 S.E.2d 795, 800 (2013) ("A condition precedent is an event
which must occur before a contractual right arises, such as the right
to immediate performance. Breach or non-occurrence of a condition
prevents the promisee from acquiring a right, or deprives him of one,
but subjects him to no liability." (citation omitted)). As such, defendants
did not receive a windfall, since the parties explicitly bargained that in
order for Mr. Holmes to receive the benefit of the annual payments of the
annuity Mr. Holmes must survive; he did not, and thus defendants have
not breached the Agreement. We do not believe that the unfortunate
timing of Mr. Holmes' death changes this analysis for purposes of
restitution. Indeed, restitution is an inapplicable remedy as the explicit
terms bargained for in the Agreement simply were not met, and thus
neither Mr. Holmes nor plaintiff who stands in his stead "acquir[ed] a
right[.]" *Id.* Accordingly, the Commission did not err in concluding that
plaintiff was not entitled to the $93,994.39, the cost of the annuity.

B.   Seed Money

[2] The analysis as to the seed money is a bit different. As to the seed
money, defendants argue that they are not required to pay it due to the
plain language of the Agreement. Essentially, defendants contend that

the purpose of the Agreement was frustrated. While this may be true, and indeed is for this case pursuant to the uncontested determination of the Commission, that does not mean that plaintiff is not entitled to restitution. Defendant makes no argument for why restitution would not be applicable. Unlike the annual payments, the seed money to fund the MSA does have a guaranteed benefit in a specific sum, $19,582.37. Furthermore, it does not have any specific language requiring Mr. Holmes to survive. While the seed money provision does note that it is for Mr. Holmes' benefit, and while according to the unchallenged determination of the Commission, this purpose was frustrated, plaintiff may still be able to recover restitution if defendant was unjustly enriched. *See generally Shelton*, 223 N.C. at 68, 25 S.E.2d at 454; *see also* Restatement (Second) of Contracts § 377. Plaintiff contends that "[i]f an injured worker dies and funds remain in the MSA account, the money passes to the injured workers' estate." Defendants do not contest this fact. As such, we conclude that defendants would be unjustly enriched if they were allowed to keep the seed money; like with the annual payments, defendants could have specifically bargained that the payment of the seed money was conditioned on Mr. Holmes survival, but they did not do so. We realize that this may have simply been inartful wording of the Agreement, but the parties agreed that the seed money would be for Mr. Holmes' benefit, and certainly a benefit to Mr. Holmes' estate is still a benefit to him.

As to the remedy of restitution, the fact that the purpose was frustrated because the money will not be used for Mr. Holmes' future medical expenses does not mean defendant "may receive a windfall[.]" *WMS, Inc.*, 166 N.C. App. at 360, 602 S.E.2d at 712. As noted above, "[t]he principle of restitution is to deprive the defendant of benefits that in equity and good conscience he ought not to keep even though plaintiff may have suffered no demonstrable losses." *Id.* at 361, 602 S.E.2d at 712. Plaintiff gave up his legal rights to receive ongoing workers' compensation benefits in exchange for those benefits not contested before this Court and funding of an inheritable MSA with $19,582.37 non-contingent seed money and additional annual payments each year, totaling $166,450.14, contingent upon his survival of 18 more years. We thus conclude that it would be inequitable for defendants to keep the $19,582.37, despite the purpose of the Agreement being frustrated, as the Agreement did not condition payment of this sum upon Mr. Holmes' continued survival. Accordingly, defendants must pay plaintiff the $19,582.37 that would have been used as seed money for the MSA.

**IN RE A.D.N.**

[231 N.C. App. 54 (2013)]

IV. Conclusion

For the foregoing reasons, we affirm the Commission's denial of plaintiff's request for the cost of the annuity, but we reverse as to the $19,582.37 in seed money.

AFFIRMED in part; REVERSED in part.

Judges CALABRIA and DAVIS concur.